**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF MISSISSIPPI
EASTERN DIVISON**

**DAVID WILLIAMS, #83234**                                                                **PLAINTIFF**


**VERSUS**                                                                **CAUSE NO.: 2:17-CV-152-MTP**


**JASON MYERS, ET AL.**                                                                **DEFENDANTS**

**SHERIFF ALEX HODGE, JEFF MONK, JOSEPH WHITE,
AND JONES COUNTY, MISSISSIPPI'S MEMORANDUM OF
<u>AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Come now, Sheriff Alex Hodge, Jeff Monk, Joseph White, and Jones County,

Mississippi, by and through counsel and pursuant to Rule 56 of the Federal Rules of

Civil Procedure, respectfully submit their Memorandum of Authorities in Support of

Motion for Summary Judgment as follows:

**INTRODUCTION**

Plaintiff is a *pro se* inmate whose claims arise out of his arrest by the Jones

County Sheriff's Department. *CM/ECF Doc. No. 1.* More specifically, Plaintiff complains

that during his December, 2016 arrest Defendants Jason Myers[1], Jeff Monk, and Joseph

White subjected him to excessive force. *Id.* Additionally, Plaintiff makes a claim against

Sheriff Alex Hodge for failing to train and/or supervise his deputies.  Finally, Plaintiff

makes a claim for denial of medical care against Jones County, Mississippi and Sheriff

---

[1] Officer Myers is currently deployed with the United States Army and undersigned counsel has filed a
Motion for Stay as to all claims asserted against him. *Hodge Aff.* ¶ 4.

Alex Hodge. For all of the reasons outlined herein, moving defendants are entitled to summary judgment as to all claims.

## FACTUAL BACKROUND

On December 14, 2016, Plaintiff was arrested by the Jones County Sheriff's Department. *Omnibus Hearing Transcript* ("OHT"), at 9. More specifically, Jones County Sheriff's Department officers Myers and White had a warrant for Plaintiff's arrest when they spotted him in a truck driving north on Highway 15. *Aff. J. White*, ¶ 3. The officers activated their sirens and lights to pull Plaintiff over; however, Plaintiff failed to stop and instead sped down the highway where he ultimately parked at an unknown residence and fled the officers on foot because he "didn't want to go to jail." *Id*. at ¶ 3-4; *OHT*, at 10 & 12.

Officer Myers and Officer White stopped their vehicle and pursued Plaintiff on foot. *Aff. J. White*, ¶ 4-5. Plaintiff contends that he did not go far before he was Tased by Officer Jason Myers; however, the Taser report reveals that Officer Joseph White actually Tased Plaintiff. *OHT*, at 12-13; *Taser Deployment Log*. Plaintiff also believes that he was continuously Tased, however, again the Taser report indicates Plaintiff was only Tased once for a period of five (5) seconds. *Id*., at 12-13 & 41:5-10; *Aff. J. White,* ¶ at 5. Plaintiff states the Tasing "didn't hurt" at the time, but that it caused his speech impediment, seizures, and chronic headache. *OHT*, at 13:17-22.

Plaintiff contends that after being Tased, Officer Myers grabbed him by the collar and kicked him in the back of the head three (3) times. *Id*., at 13-14. Plaintiff again states this "didn't hurt." *Id*., at 14:2-6. Plaintiff believes Officer Jeff Monk then kicked him in

2

his face by his jaw. *Id.*, at 14:7-10. Plaintiff states that as a result he suffers from a speech impediment, seizures, and a headache "all the time." *Id*.

Additionally, Plaintiff alleges a failure to protect and/or failure to train claim against Sheriff Alex Hodge because he is "responsible" or his deputies' actions. *Id.*, at 16.

Finally, Plaintiff makes a claim for denial of medical care against Sheriff Hodge and Jones County, Mississippi. *Id.*, at 18:10-12. Plaintiff testified that at booking he was seen by a nurse and sent immediately to Ellisville clinic. *Id.*, at 18-19. Plaintiff states his jaw was x-rayed and they "gave him a shot" during this visit. *Id*. at 19:1-7 & 20. Plaintiff testified that a few days later he experienced a seizure and was immediately taken to the emergency room and given a CAT scan to determine if there was any head trauma. *Id.*, at 21.  Plaintiff alleges that medical providers recommended he receive an MRI, however he was denied this test. *Id*. Additionally, Plaintiff states he saw Dr. Donnie Scoggins at the Jones County Jail. *Id.*, at 22. Thus, in the two (2) weeks Plaintiff went to the hospital twice and was seen on multiple occasions by an in-jail doctor. *Id*. Plaintiff admits that he has been back to the Jones County Jail 4-5 times since his initial arrest in December of 2016, but only complains of this initial two (2) week visit. *Id*. at 25-26.

Finally, Plaintiff admits he failed to file any grievances concerning these matters. *Id.*, at 38-39.

## STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense-- or the part of each claim or defense--on which summary judgment is sought. The court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The United States Supreme Court has explained that the language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact...." *Harris v. Mississippi Valley State Univ.*, 899 F. Supp. 1561 (N.D. Miss. 1995)(citing *Celotex,* 477 U.S. at 324).

Once a properly supported Motion for Summary Judgment is presented, the nonmoving party must rebut it with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). The non-moving party cannot rely on mere denial of material facts or unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda; rather, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg 7 Narcotics Trafficking Task Force*, 379 F.3d 293,

301 (5th Cir. 2004).  Here, the movants are entitled to summary judgment as a matter of law.

**CLAIMS**

Plaintiff alleges that he was subjected to excessive force by officer Jason Myers, Officer Joseph White, and Officer Jeff Monk.    Plaintiff further alleges that he was subjected to a denial of adequate medical care by Sheriff Alex Hodge and Jones County, Mississippi. Additionally, Plaintiff has asserted a failure to supervise/train claim against Sheriff Alex Hodge.

**ARGUMENT**

**I.    LACK OF DIRECT INVOLVEMENT—Inadequate Medical Care.**

Plaintiff asserts a claim for denial of adequate medical care against Sheriff Alex Hodge in his individual capacity; however, Plaintiff has failed to demonstrate the Sheriff was involved in such alleged constitutional deprivation. Individual liability under 42 U.S.C. § 1983 "may not be predicated on the doctrine of *respondeat superior*;" rather, "[o]nly the direct acts or omissions of government officials…will give rise to individual liability under Section 1983."  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).    In order to assert a claim against Sheriff Hodge in his individual capacity, Plaintiff must show that he was personally involved in the alleged constitutional deprivations. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)("Personal involvement is an essential element of a civil rights cause of action.").

To the extent that Plaintiff has asserted a claim of a denial of medical care against Sheriff Hodge, Plaintiff has failed to demonstrate that he had direct involvement in the

5

circumstances allegedly giving rise to the aforementioned claim. Plaintiff contends that Sheriff Hodge denied him medical care, but failed to state any direct involvement in the denial. *OHT,* at 18:10-12. In fact, Plaintiff states that he was denied an MRI by the Officer who transported him the emergency room, Officer Curtis White. *Id*. at 19. Plaintiff bases his denial of medical care claim on this denial of an MRI. *Id*. At no point in time did Plaintiff testify that Sheriff Hodge participated directly in denying him medical care. Furthermore, as demonstrated by Sheriff Hodge's affidavit, he had no contact with Plaintiff and was never subjectively aware of any medical need or treatment pertaining to Plaintiff. *Hodge Aff.* ¶ 3. As such, Hodge's lack of personal participation in Plaintiff's denial of medical care is fatal to his claim against him.

## II.   QUALIFIED IMMUNITY

Sheriff Alex Hodge, Officer Jeff Monk, and Officer Joseph White are entitled to qualified immunity in this matter because Plaintiff has failed to prove he suffered a constitutional deprivation. Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001).  The purpose of qualified immunity is to protect public officials from the "burden of fighting lawsuits which arise from the good-faith performance of their duties." *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997). Thus, qualified immunity "is not just immunity from judgment, but rather, is immunity from all aspects of suit." *Jacques v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994).   Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

 In assessing a claim of qualified immunity, courts should apply a two-part analysis. The threshold question is "whether Plaintiff's allegations establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194 (2001). However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*    Plaintiff's claims are ripe for dismissal as he has failed to allege a constitutional deprivation upon which relief can be granted.

A. <u>**Excessive Force.**</u>

Plaintiff asserts claims against: (1) Officer Joseph White for continuously tasing him, (2) Officer Jason Myers for allegedly kicking him in the back of the head after he was Tased[2]; and (3) Officer Jeff Monk for purportedly kick him in the jaw; *OHT*, at 13-14. See also, *Taser Deployment Log*.

---

[2]Again, given that Meyers is currently deployed with the U.S. Army, he has moved to stay this matter.

To establish a claim of excessive force under the Fourth Amendment, Plaintiff must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005). Excessive force claims are necessarily fact-intensive; whether the force used is "excessive" or "unreasonable" depends on "the facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also Brosseau v. Haugen,* 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)(observing that this "area is one in which the result depends very much on the facts of each case"). Determining whether an officer's use of force was objectively reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *Deshotels v. Marshall*, 454 F. App'x 262, 267 (5th Cir. 2011)

"Courts must judge the reasonableness of an officer's conduct by taking into account the 'tense, uncertain, and rapidly evolving'" circumstances in which officers must often "'make split-second judgments ... about the amount of force that is necessary in a particular situation.'" *Saucier*, 533 U.S. at 205. Quoting *Graham*, 490 U.S., at 397. Courts should judge from "on-scene perspective" rather than the '20/20 vision of hindsight,' of an officer's objectively reasonable belief that a certain degree of force was lawful under the circumstances. *Id*.

First, Officer Joseph White denies any use of excessive force with respect to Plaintiff. *See Aff. J. White*, ¶ 7. Notably, Plaintiff contends he was actually Tased by Officer Jason Meyers. *OHT*, at 12-13 & 41. This is sufficient to dismiss the claim for excessive force against White.

Nevertheless, Ofc. White was the individual who deployed a Taser against Plaintiff and his testimony and the Taser Deployment Log demonstrate that Plaintiff was actually Tased once for five (5) seconds. *Aff. J. White*, ¶ 5; *Taser Deployment Log*. Officer White deployed his Taser because Plaintiff fled from law enforcement officers and he was trying to subdue Plaintiff.

Significantly, prior to the Plaintiff's arrest, Officer Meyers and Officer White were informed that Plaintiff was armed with a 7mm Magnum Rifle and a large handgun. *Aff. J. White*, ¶ 3. When officers attempted to pull Plaintiff over to effectuate his arrest, he resisted arrest and led officers on a car and foot chase. *Id.* Plaintiff admits the same stating he did not want to go to jail. *OHT*, at 12.   Myers and White chased Plaintiff who ultimately was Tased in an effort to take him into custody. The use of a Taser on the Plaintiff for five (5) seconds was not unreasonable in light of the circumstances. Officer White believed Plaintiff to be armed and Plaintiff resisted arrest. *Aff. J. White*, ¶ 3.

Furthermore, Plaintiff has failed to demonstrate any injury as a result of the Tasing. He alleges he has a speech impediment, seizure, and continuous headaches as a result of the Tasing, but has failed to provide any medical records to connect his headaches and seizures to his being Tased. Additionally, moving defendants have

provided a telephone recording of Plaintiff on January 19, 2018 where there is no indication of plaintiff having a speech impediment. See, *Phone call to Angie Hancock* & *Phone call to Tina Williams*.

As for Officer Jeff Monk, Plaintiff alleges the Officer kicked him in the face. *Id.*, at 14:7-10. Officer Jeff Monk denies that he used any excessive force on Plaintiff, as he was not even present during the time of Plaintiff's arrest. See, *Aff. J. Monk*, ¶ 3-5.  Competent summary judgment evidence demonstrates that Officer Monk did not arrive on the scene until well after the Plaintiff had been subdued. *Id.*; *Aff. J. White*, ¶ 6. Thus, Officer Monk could not have used excessive force at the time described by Plaintiff.  However, even if Plaintiff's claims were taken as true, again, Officers believed that Plaintiff was armed with weapons and Plaintiff was resisting arrest.  *Aff. J. White*,¶ 3. Once Plaintiff was Tased, the "Taser lines" broke and Plaintiff again began resisting arrest again. See, *Case Report.* Any force that was allegedly used by Officer Monk or any of the Officers was reasonable under the circumstances.

Finally, it should be noted that Plaintiff was under the influence of drugs at the time of his arrest, specifically methamphetamines and the same was found inside the vehicle he had recently vacated during his chase with the officers. See, *Taser Report* & *Case Report*. Plaintiff cannot recall who Tased him or who was even at the scene during his arrest. *OHT*, at 12-13. Thus, Plaintiff has failed to state a constitutional deprivation under the 4th Amendment against Officer White and Officer Monk.

### B.   Denial of Medical Care

Plaintiff asserts a claim for inadequate medical care against Sheriff Alex Hodge. *OHT*, at 18:10-12. More specifically, Plaintiff alleges he was denied an MRI. *Id.*, at 18-20.[3]

To state a claim for denial of adequate medical care, a claimant must show a sufficiently culpable state of mind on the part of the official sued, "deliberate indifference."[4] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  More specifically, a prisoner must demonstrate "deliberate indifference to [the prisoner's] serious medical needs, constituting the unnecessary and wanton infliction of pain…." *Id.*  In *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999), the Fifth Circuit explained that "[u]nder the 'deliberate indifference' standard, a prison official is not liable for the denial of medical treatment 'unless the official knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Put simply, the Plaintiff must demonstrate that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n. 12 (5th Cir. 2006)(citation omitted).

---

[3] Sheriff Hodge had no personal involvement in denying Plaintiff medical care. See Sec. I.

[4] Whether Plaintiff was a pre-trial detainee or whether he was a convicted inmate is of no moment, as the "deliberate indifference" standard applies to the inadequate medical care claims of both. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

Plaintiff has failed to state a claim because he readily admits he was treated on multiple occasions during his two (2) week stay in the Jones County Jail. *OHT*, at 22. Plaintiff simply did not agree with his medical care.  Plaintiff testified that at booking he was seen by a nurse and sent immediately to Ellisville clinic where his jaw was examined and they "gave him a shot." *Id*., at 18-20. Plaintiff testified that a few days later he experienced a seizure and was immediately taken to the emergency room and given a CAT scan to determine if there was any head trauma. *Id*., at 21.  Plaintiff avers that the hospital suggested he receive an MRI, however Officer Curtis White could not stay at the hospital for the time it would take to conduct the MRI. *Id*.

Plaintiff admits that he has subsequently asked other facilities where he was incarcerated for an MRI, but was told by a doctor that "it was not life threatening" if he did not have one and that his seizures were under control. *Id*., at 21. Additionally, Plaintiff states he saw Dr. Donnie Scoggins on several occasions at the Jones County Jail. *Id*., at 22. Thus, in the two (2) weeks Plaintiff was in the Jones County Jail, he went to the hospital twice and was seen on multiple occasions by an in-jail doctor. *Id*.

It is abundantly clear that Plaintiff was not denied medical treatment for his seizures or injury and was seen on multiple occasions by the hospital and doctors. Further the singular test – MRI – that Plaintiff complains he did not receive was admittedly "not life threatening" and does not constitute as a serious medical need. See, *Gobert*, 463 F.3d 339, 345 n. 12.

Finally, inasmuch as Sheriff Hodge did not have contact with Plaintiff, he was not subjectively aware of any serious medical need and could not have been deliberately indifferent to the same. *Aff. Hodge*, ¶ 3-4.

### C.     Failure to Train/Supervise

Plaintiff also asserts a failure to train and/or supervise claim against Sheriff Alex Hodge in his individual capacity. To prove a failure to train claim, Plaintiff must demonstrate: (1) a failure to train (2) a causal link exists between the failure and violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. Mere proof that the injury could have been prevented if the subordinate had received better or additional training cannot, without more, support liability. *Id*. Further, for liability to attach based on an inadequate training claim, the plaintiff must allege with specificity how a particular training program is defective. *Id*. (citations omitted). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 131 S. Ct. 1350, 1360, 563 U.S. 51, 62 (2011).

Similarly, failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)(citing *City of Canton*, 489 U.S. at 390–91, 109 S.Ct. 1197).

Plaintiff has not stated, beyond mere conjecture that had the officers received better training they would not have allegedly beat him.  As such, liability does not attach to Sheriff Alex Hodge since Plaintiff has not alleged with specificity how the

Jones County Sheriff's Department Training was defective on arresting and using force during such arrests. *OHT*, at 24:11-16. Notably, both White and Myers were certified officers at the time of the incident. See, *Certificates*. It is well-established that where training complies with state law requirements, the Fifth Circuit holds a plaintiff must show "this legal minimum of training was inadequate to enable the [officers] to deal with 'usual and recurring situations' faced by jailers and peace officers." *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992); see also *Sanders–Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010) (affirming grant of summary judgment where the officers completed state-mandated training program and the plaintiff did not allege the state requirements were inadequate). Plaintiff has failed to offer any evidence to show the deputies' state-certified training was inadequate.

Additionally, Plaintiff cannot show a pattern of similar violations by other officers existed for purposes of demonstrating the 'deliberate indifference" that is necessary for a successful failure to train claim. In fact, any unreasonable force used on Plaintiff would be a clear violation of county policy. Thus, Plaintiff has failed to provide competent summary judgment evidence to sustain a failure to train/supervise against Sheriff Hodge in his individual capacity.

## II. MONELL

A local government can be held liable under Section 1983 for violating a citizen's constitutional rights only if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for

[their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id*. Thus, there is no *respondeat superior* liability under Section 1983; rather, the key to municipal liability is demonstrating that the deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell*, 436 U.S. at 694. Simply put, the unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Here, to establish liability against Jones County under 42 U.S.C. §1983, Plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Independent School Dist*., 349 F.3d at 244, 247 (5th Cir. 2003). "Proof of an official policy or custom can be shown in several ways, including: (1) formally adopted policies; (2) informal customs or practices; (3) a custom or policy of inadequate training, supervision, discipline, screening, or hiring; or (4) a single act by an official with final policymaking authority." *Thomas v. Prevou*, 2008 WL 111293, *3 (S.D. Miss. 2008)(citing *Monell v. City of New York Dept. of Social Servs*., 436 U.S. 658, 694 (1978); *Snow v. City of El Paso, Texas*, 501 F. Supp. 2d 826, 831 (W.D. Tex. 2006)). Plaintiff has failed to show that Sheriff Hodge, in his official capacity as the duly elected Sheriff of Jones County, was the "moving force" of his alleged constitutional violation, which moving defendants affirmatively deny such

violation exists. See *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)(failing to demonstrate a constitutional violation is fatal to Plaintiff's claim).

Nevertheless, Plaintiff must also demonstrate a link between the policy and the constitutional violation, and the policy must be maintained with "objective deliberate indifference" to a constitutionally protected right. *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002). A municipality acts with objective deliberate indifference if it promulgates a policy or custom despite the "known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 567. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *Id.* at 579. Here, Plaintiff has alleged that that Sheriff Alex Hodge, in his official capacity as the duly elected Sheriff of Jones County, Mississippi, exhibited deliberate indifference in his training, supervision and discipline of his officers which resulted in the use of excessive force against him.[5] *OHT*, at 16.

To prevail under an inadequate supervision or training theory of liability against a County, a plaintiff must show "(1) the training [or supervision] procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the…training [or supervision] policy, and (3) the inadequate…training [and/or supervision] policy directly caused the plaintiff's injury." *Thomas v. Prevou*, 2008 WL 111293, at *4 (S.D. Miss. 2008); *see also Baker v. Putnal,* 75 F. 3d

---

[5] The excessive force claims are detailed further in Sec. II (A).

190, 200 (5th Cir. 1996)(citing *City of Canton v. Harris,* 489 U.S. 378, 385–87, 109 S. Ct. 1197, 1205–07, 103 L.Ed.2d 412, 424–26 (1989); *Benavides v. County of Wilson,* 955 F.2d 968, 972 (5th Cir. 1992)).

### A.   Adequate County Policies.

#### 1.   Training on Use of Force.

Here, Plaintiff cannot show the County lacked adequate training policies on the use of force. Where even "non-certified employees received some training," a plaintiff "cannot rely on a complete failure to train theory." *Thomas,* 2008 WL 111293, at \*5. Instead, the plaintiff must "allege with specificity how a particular training program is defective." *Id.* (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)).

Plaintiff has failed to demonstrate or allege with specificity how the training program in Jones County is defective. *OHT*, at 24. To the contrary, both Myers and White were certified officers by the State of Mississippi and received on-the-job training on the use of force. Further, there is no evidence that a constitutional violation for use of excessive force existed. In light of the foregoing failures, Plaintiff has failed to meet his burden of proof that there were inadequate supervision policies surrounding the use of force by correctional officers.

### B.   Plaintiff Cannot Show Deliberate Indifference.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 117 S. Ct. 1382, 1391, 520 U.S. 397, 410 (1997). Proof of more than a single instance of the lack of training or supervision

causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference. *Thompson v. Upshur County, TX*, 245 F. 3d 447, 459 (5th Cir. 2001)(citing *Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir. 1998); *Thompkins v. Belt,* 828 F.2d 298, 304-05 (5th Cir. 1987)). The plaintiff must generally demonstrate at least a pattern of similar violations. *Id.* (citing *Snyder,* 142 F.3d at 798). Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. *Id.* (citing *City of Canton v. Harris*, 478 U.S. 378, 109 S. Ct. 1197, 1205 n. 10 (1989); *Snyder,* 142 F.3d at 799). "Standing alone, [even] an expert's opinion is generally not enough to establish deliberate indifference." *Id.*

As to a single-incident theory of deliberate indifference, the Fifth Circuit has instructed, "a plaintiff seeking recovery under a failure to train or supervise rationale must prove that the police chief failed to control an officer's 'known propensity for the improper use of force.'" *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005) (quoting *Sims v. Adams*, 537 F.2d 829, 832 (5th Cir. 1976)).

Here, Plaintiff has provided no evidence of prior instances of Officer Monk or Officer White ever using excessive force. Furthermore, moving defendants expressly deny that any of the above violations occurred.[6] Thus, Plaintiff cannot show deliberate indifference on the part of Sheriff Alex Hodge as to the failure to discipline or supervise these particular officers regarding the use of force.

---

[6] See Sec. II(A)

Generally, more than a single instance of failure to train or supervise is required to demonstrate deliberate indifference. See *Thompson v. Upshur County, TX*, 245 F. 3d 447, 459 (5th Cir. 2001). In other words, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson,* 131 S. Ct. 1350, 1360, 563 U.S. 51, 62 (2011)(citation omitted). "Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the 'deliberate indifference' — necessary to trigger municipal liability." *Id.* (citation and internal quotations omitted). Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. *Id.*

Plaintiff has offered no evidence to show a pattern of similar instances. Accordingly, in addition to a failure to demonstrate that County training/supervision policies by Sheriff Alex Hodge that were inadequate, Plaintiff has failed to show any deliberate indifference on the part of any County policymaker.

**C.     Plaintiff Cannot Show Causation.**

A plaintiff must "prove the existence of a direct causal link between the inadequate training and the plaintiff's constitutional deprivation." *Duke v. Cartlidge*, 2006 WL 2788541 (S.D. Miss. Sep. 26, 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-86 (1989)). Even assuming where a plaintiff has established a failure to train of a singular officer, the fact that "a particular officer may be unsatisfactorily trained will

19

not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton,* 489 U.S. at 390. A plaintiff's simply arguing that additional training would have prevented an injury is insufficient. *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

Here, Plaintiff made only conclusory arguments concerning inadequate training, supervision and/or discipline.  In fact, when questioned about what in particular was deficient about the officer's training, Plaintiff simply states that he just doesn't "think [the officers] were trained." *OHT*, at 24. Accordingly, given Plaintiff's failure to establish the necessary element of causation, Sheriff Alex Hodge is entitled to summary judgment.

For all of the aforementioned reasons, Plaintiff's federal, municipal liability claim arising out of the alleged use of force fails and Jones County is entitled to Summary Judgment for the same.

## III.   PRISON LITIGATION REFORM ACT (PLRA)

Plaintiff's denial of medical care claim falls under the auspices of the Prison Litigation Reform Act (PLRA). Congress enacted the Prison Litigation Reform Act, 42 U.S.C. § 1997, in "an effort to address the large number of prison complaints in Federal court." *Jones v. Beck*, 549 U.S. 199, 202 (2007). Here, PLRA serves to preclude Plaintiff from asserting his claims against Sheriff Alex Hodge and Jones County, Mississippi.

### A.   Failure to Exhaust Administrative Remedies

Plaintiff's denial of medical care claim is subject to summary judgment for his failure to exhaust his administrative remedies, as required by the PLRA. This

"exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings, such as money damages. *Booth v. Churner,* 532 U.S. 731, 740–41 (2001).

In the instant case, at all times relevant to Plaintiff's claims, Jones County Jail had in place a grievance procedure which served as its administrative remedies program. *See, Grievance Procedure.* The grievance procedure includes submitting an informal grievance and then a formal grievance in writing. *Id.* Per policy, inmates will receive a decision from the grievance officer/board no later than fifteen (15) days after the grievance is received. *See id.*

Plaintiff received the grievance procedure and filed multiple requests during his stay as an inmate. See, *Jail File*; *Aff. J. Stone*. Thus, Plaintiff was clearly familiar with the policies and procedures of the Jones County Jail, however he neglected to ever file a grievance concerning his alleged denial of adequate medical care. *Id.* Plaintiff further admits that he did not file a grievance as to any of these matters. *OHT,* 38;15-23.

Because Plaintiff failed to submit any grievances pursuant to the governing policy, Plaintiff failed to exhaust his administrative remedies as to his alleged denial of medical care claim against Sheriff Alex Hodge and Jones County, Mississippi and the same must be dismissed.

### B.   <u>Physical Injury</u>

Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. . . ." 42 U.S.C. § 1997e(e); *see also Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)(affirming district court's grant of summary judgment based on finding that "[n]o adequate showing of a physical injury has been made in this case which would permit recovery of either emotional or mental damages."). The Fifth Circuit has explained that the physical injury required by § 1997e(e) "must be more than de minimis, but need not be significant." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). The physical injury requirement applies regardless of the type of claim sought, as it is the nature of relief sought that dictates its application. *Geiger v. Jowers*, 404 F.39d 371, 375 (5th Cir. 2005).

In the present case, there is no evidence that Plaintiff suffered any physical injury that arose of any alleged denial of medical care.

### CONCLUSION

For the reasons stated hereinabove as well as in moving defendants' Motion for Summary Judgment, the movants are entitled to summary judgment as to these claims.

**DATE:**        **October 17, 2018.**

Respectfully submitted,

**SHERIFF ALEX HODGE, JEFF MONK, JOSEPH WHITE AND JONES COUNTY, MISSISSIPPI**

By:     /s/William R. Allen
        One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
KATELYN A. RILEY (MSB #105115)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS  39602-0751
Tel. 601-833-4361
Fax 601-833-6647
Email:  wallen@aabalegal.com
Email:  kriley@aabalegal.com

## CERTIFICATE

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Memorandum in Support of Motion for Summary Judgment with the Clerk of the Court using the ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participant:

> David Williams, #83234
> CMCF/ R3C
> 3794 Hwy 468
> Pearl, MS 39208

This the 17th day of October, 2018.

/s/William R. Allen
OF COUNSEL